UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JERRY LYNN SHAFER,

                Plaintiff,                Case No. 1:08-cv-1169

v.                                           Honorable Janet T. Neff

BARBARA S. SAMPSON et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Pugsley Correctional Facility. He is serving a prison term of two to twenty years, imposed by the Cass County Circuit Court on September 27, 2006, after he pleaded guilty to first-degree home invasion, MICH. COMP. LAWS § 791.110a(5). Plaintiff sues Michigan Parole Board (MPB) Chairperson Barbara S. Sampson, MPB Member James Atterberry, MDOC Director Patricia L. Caruso, and Michigan Governor Jennifer Granholm.

According to the allegations of the complaint, Plaintiff received a Parole Guideline Score Sheet that placed him in the category of "High Probability" of parole. On April 10, 2008, after Plaintiff had received the score sheet, Defendant James Atterberry conducted a parole interview with Plaintiff to evaluate his suitability for parole. Plaintiff alleges that, at the interview, he accepted full responsibility for his actions and expressed considerable remorse. Plaintiff also informed Defendant Atterberry that he had attempted repeatedly to be placed in the Assaultive Offender Program before his parole interview, but that he had not been successful.

On April 28, 2008, Plaintiff received a "Parole Notice of Decision" that informed him that his incarceration was being continued for an additional 18 months. As substantial and compelling reasons for not granting parole, the notice indicated that Plaintiff had "[a] history of Parole Failure, [l]acks insight into earlier failure, substance abuse is of long standing duration, is of a polysubstance nature." (Compl. ¶ 24.)

Plaintiff complains that the reasons cited in the parole decision were reasons already considered in determining the parole guideline score of "High Probability" of parole. He contends

that MICH. COMP. LAWS § 791.233e prohibits parole board members from using as compelling reasons to depart from the parole guideline score those factors that the scoring guidelines already have taken into account. He therefore asserts that Defendants have denied him due process by violating MICH. COMP. LAWS §§ 791.233e(2)(d) and (6). Specifically, Plaintiff alleges that Defendants have violated MICH. COMP. LAWS § 791.233e(6), which requires substantial and compelling reasons for a departure from the parole guideline score. He also alleges that Defendants have violated MICH. COMP. LAWS § 791.233e(2)(d) by using his history of parole failure as a reason to depart from the guidelines because the provision requires that parole failure be considered in determining the prisoner's criminal record score as part of the calculation producing the parole guideline score. In addition, Plaintiff claims that Defendants, by communicating their fraudulent applications of state law through the mails, have engaged in fraudulent communications by mail and wire, in violation of 18 U.S.C. § 1961.

### II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not

accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff claims that Defendants, when denying his parole, violated his due process rights by failing to provide valid substantial and compelling reasons for departing from the parole guidelines and by double-counting his history of parole failure, in violation of MICH. COMP. LAWS §§ 791.233e(2)(d) and (6). To establish a procedural due process violation, a petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir.2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do

so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, 93 F. App'x 805, 806 (6th Cir. 2004); *Martin v. Ohio Adult Parole Auth.*, 83 F. App'x 114, 155 (6th Cir. 2003); *Bullock v. McGinnis*, 5 F. App'x 340, 342 (6th Cir. 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).

Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991);

*Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held that the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole." *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole. *Greenholtz*, 442 U.S. at 7-8. At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board. *See Sweeton*, 27 F.3d at 1165 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board"). Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate. *Carnes*, 76 F. App'x at 80.

Until Plaintiff has served his twenty-year maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider petitioner for parole, therefore, implicates no federal right. In the absence of a liberty interest, petitioner fails to state a claim for a violation of his procedural due process rights.

### B.       Violation of 18 U.S.C. § 1961

Plaintiff contends that, in addition to violating state law governing parole, Defendants have violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, because they fraudulently used the mail or wire services to transmit his purportedly unlawful parole decision to him.  Plaintiff's allegations are patently frivolous.  First, transmission of a parole decision, however that decision is reached, does not become a fraudulent use of the mail simply because Plaintiff believes it is wrong or was reached in violation of Michigan law.  Second, to the extent Plaintiff seeks criminal relief, a civil rights action is not the proper vehicle for instituting criminal charges.  *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate criminal proceedings); *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 692-93 (6th Cir. 1994) (private party lacks standing to compel the state to pursue criminal or civil actions).  Third, Plaintiff's civil RICO claim against the defendants fails to state a claim for relief because he did not demonstrate any injury to his business or property, which is a prerequisite to a successful civil RICO claim. *See* 18 U.S.C. § 1964(c); *Sedima v. Imrex Co.*, 473 U.S. 479, 495 (1985); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299-1300 (6th Cir.1989); *see also Lee v. Michigan Parole Board*, 104 F. App'x 490, 492 (6th Cir. 2004).  Finally, Plaintiff has failed to allege any facts supporting a pattern of racketeering activity. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781-82 (6th Cir. 2000).  For all these reasons, Plaintiff fails to state a claim for relief under 18 U.S.C. § 1961.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: January 29, 2009                         /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge